UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JOSEPH EVANS, JR.,** § | | |
| **Plaintiff** § | | |
| § | | |
| **v.** § | | |
| § | **CA NO. 1:25-cv-00374** | |
| **TESLA, INC.** § | | |
| *Defendant.* § | | |
| § | | |

**ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Joseph Evans, Jr., ("Evans" or "Plaintiff") in the above-styled cause, and files this Complaint against Tesla, Inc. ("Tesla" or "Defendant") alleging violations under the 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 for Defendant's unlawful employment practices on the basis of race, and retaliation, and would respectfully show unto the Court the following.

## I.
## PARTIES

1. Plaintiff, Evans, is an individual who is a citizen of the State of Florida, residing in Dade county and who was at all times relevant hereto was a resident of Florida.

2. Defendant, Tesla is a Texas Corporation with its principal place of business in Travis County, Texas. Defendant may be served with process by serving its

registered agent, C.T. Corporation System, 1999 Bryan St. Ste. 900, Dallas, Texas 75201-3136.

## II.
## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## III.
## VENUE

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Travis County, Texas.

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff timely filed a charge of discrimination against Defendant which was dual filed with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC") pursuant to those agencies' work sharing agreement. The EEOC issued a Notice of Right to Sue on January 7, 2025, and Plaintiff filed this action within 90 days of receipt.

## V.
## FACTUAL BACKGROUND

6. Evans is a forty-eight year old African American male. He holds a Bachelor of Arts in business administration with a minor in business management

and is close to completing a masters in robotics and automation controls. He has over twenty-five years of experience as a control and automation engineer.

7.  On July 5, 2022, Evans was hired by Evolve Business Advisory and assigned as a contract worker reporting to Tesla in their cell formation department for the Cybertruck batteries.

8.  On August 12, 2022, Tesla contacted Evans and asked him to apply for a Senior Controls Engineer role with Tesla's Cell Engineering Team in Austin, Texas. Evans applied for the position. Evans completed an interview with the recruiter and with the hiring manager, Matthew Potter ("Potter") (Caucasian).

9.  During the interview Potter informed Evans that he and another candidate Brent Messex ("Messex") (Caucasian)(in his twenties), would be scheduled for lengthy panel interviews and if he passed the panel interview he would be offered a position as a Senior Control Engineer and if he did not pass the panel interview he would be offered a position as a Control Technician.

10. On September 16, 2022, Tesla Senior Sourcer in Cell Engineering, Austin Closs ("Closs") contacted Evans to schedule a panel interview for the position. The interview was scheduled to last three hours and required Evans to provide a thirty minute presentation.

11. Messex's panel interview was scheduled first, and he did not pass the panel interview. After Messex failed the panel interview, Potter told HR to cancel

Evan's panel interview. When HR informed Evans about Potter's decision, Evans requested a one-on-one meeting with Potter to discuss the decision.

12. During the one-on-one meeting, Potter explained that because Messex performed poorly in the panel interview he was concerned about sending Evans for a panel interview. Evans responded:

> But you based on what Brett did on what I can do, that's not fair because it say that this is an equal opportunity employer. That means the same opportunity you gave Brett is the same opportunity that I have. The same requirements that you got from Brett, from point A to point Z is the same requirements that I am supposed to have. There is not supposed to be a change.

13. Evans further told Potter that he had twenty-five years of experience and a degree and that he did not know how much experience Messex had but he knew that he did not have a degree and that he did not think it was fair for him to be judged on the same level as Messex. Evans further suggested that if Potter had questions about his technical ability that he should ask the people he worked with every night or review the letters of recommendation from his previous employers.

14. Potter told Evans that he could obtain a job as a control technician making $90,000 a year and that he would have to complete a panel interview for the technician job. Potter further explained that Messex interviewed with a panel for the engineering role and when he did not score well enough he was offered the technician role, and he was not required to interview with a second panel for the

technician job. Evans asked why he could not have an interview with the panel for the engineering role and be given the same opportunity that Messex had.

15.   Following this conversation Potter promised to speak to recruiting and HR. Potter then allowed Evans to complete a panel interview for the Senior Controls Engineer role. Evans completed the panel interview for Senior Controls Engineer on October 4, 2022. Following this interview, Closs emailed Evans that, "The team really loved your panel interview and wants to move forward to a final call with our leaders in Electrode!" This call with leaders was never scheduled.

16.   Following the panel interview for the Austin Sr. Controls Engineer, Evans was interviewed for three additional jobs. Each time Evans was asked which Tesla manager he currently reported to as a contract worker. Evans reluctantly informed them that he was working for Potter. After Potter was contacted, Evans was withdrawn from consideration for these additional positions. Additionally after Potter contacted the management for an open Senior Controls Engineering position in Assembly, Evans was denied that position as well.

17.   On November 4, 2022, Closs informed Evans via email that "unfortunately, at this time we have not identified a path forward. Having said that, we hope to keep in touch."

18.   On November 10, 2022, Evans complained to Closs that,

I was informed by Mr. Matthew Potter within our one-on-one meeting, if I passed the panel interview that I would receive an offer for a Senior

> Controls Engineering position within his department. If I didn't pass the panel interview, I would obtain an offer for a lower tier position titled Control Technician within his department. I passed the panel interview. Are you telling me that Tesla isn't going to withhold their agreement? I can provide proof of this agreement; if needed. Thanks in advance!

19. Tesla turned Evans' complaint over to employee relations and they interviewed Evans regarding his complaint.

20. On December 21, 2022, Evans additionally complained to Tesla Senior Employee Relations Partner Marissa Trinkle ("Trinkle") and Moody Mash regarding the fact that Potter blocked him from additional Senior Control Engineer positions in Buffalo, Fairmont and Automation. Evans specifically said,

> You are probably wondering, why would I want to continue to work with Mr. Potter after all these discriminative issues. It is simple! I am black regardless! I have to endure discriminative issues like these no matter where I go or who is manager because I am black. I cannot endure these issues without the assistance from HR. This is why I reported this issue to HR. I hate to assume but it seems like this isn't an issue HR can actually resolve since HR works for management in most cases. I am stating this because I received an email denying my opportunity to become Senior Controls Engineer within Cell Formation after obtaining HR support. I would think HR would place the Senior Controls Engineering position that I was trying to obtain in Cell Formation would be placed on Hold until this cases is concluded but it wasn't. I was hopping that this matter could be resolved internally at Tesla but sometime these issues can only be fixed by external support. After doing my research, I have discovered that discrimination against African Americans at Tesla isn't new. After witnessing the power or influence management has on recruitment or recruiters and HR, how can this matter be fixed so no African Americans have to endure these discrimination issues. Mr. Potter was able to wheel his power with the recruiters to prevent my interviewing process from transition to a panel interview. He has been able to end this hiring process during your watch. Why is recruiters working with management and not HR? Or

why HR isn't working within Tesla's hiring process with each recruiter to prevent these discrimination actions from happening to future African Americans trying to obtain equal opportunities within a company that supposed to automatically provide equal opportunities to African Americans by law.

21. On January 12, 2023, Trinkle informed Evans, "I wanted to thank you again for bringing forward your concern. We have completed our thorough review of the issues you originally escalated and the most recent issues you escalated via email, and appropriate action will be taken, based on what we learned. This investigation is now considered to be closed."

22. After failing the panel interview, Messex, was offered a position with Tesla as a Control Technician just as Potter promised. However, Evans was not offered the Control Technician job. Upon information and belief, Messex had far fewer years of experience than Evans.

23. Upon information and belief, the Senior Controls Engineer position was eventually offered a Caucasian male with approximately four years of experience.

24. Upon information and belief, at all relevant times Defendant had more than 500 employees.

### VI.
### CAUSES OF ACTION
**Count One– 42 USC § 1981 and Title VII – Race Discrimination**

25. Plaintiff incorporates paragraphs 5-24 as though fully set forth herein.

26. At all times material to this action Defendant was an "employer" as

defined by 42 USC § 1981 and Title VII.  Defendant is therefore subject to the provision of 42 USC § 1981 and Title VII.

27. Plaintiff was qualified for his position based upon training, education, experience, and the fact that he passed all relevant interviews for the position. By failing to offer Plaintiff either the role for Senior Control Engineer or Control Technician, Defendant took adverse actions against him.   Defendant took such actions because of Plaintiff's race.

28. Defendant's actions, as described herein, constitute unlawful discrimination on the basis of Plaintiff's race, in violation of 42 USC § 1981 and Title VII. The employment practices complained above were intentional.

29. As a result of Defendant's unlawful discrimination, Plaintiff suffered and expects to continue to suffer pecuniary losses, including, but not limited to, lost wages and other benefits associated with his employment.

30. As a result of Defendant's unlawful discrimination, Plaintiff suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

31. At all relevant times, Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights.  Plaintiff therefore seeks punitive damages under 42 USC § 1981 and Title VII.

32. Additionally, Plaintiff seeks equitable relief necessary to return to the position he would have been in but for Defendant's unlawful discrimination.

33. Defendant's actions referenced in the above paragraphs have caused Plaintiff to retain the services of the undersigned counsel in order to pursue his federally protected rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of the suit under 42 USC § 1981 and Title VII.

### Count Two– 42 USC § 1981 and Title VII  - Retaliation

34. Plaintiff incorporates Paragraphs 5-24 as though fully set forth herein.

35. At all times material to this action Defendant was an "employer" as defined by 42 USC § 1981 and Title VII. Defendant is therefore subject to the provisions of those acts.

36. Plaintiff engaged in protected conduct as defined when he complained to Potter, Closs and HR about the discrimination and failure to be allowed the opportunity to complete the panel interview or the roles of Senior Control Engineer or Control Technician. Despite these complaints, Evans was not offered either position and the positions were offered to less qualified men of other races. Additionally, Plaintiff was not offered any of the other roles he applied for in other cities or departments.

37. Plaintiff was qualified for these positions based upon training,

education, experience, and the fact that he passed all relevant interviews for the position. By failing to offer Plaintiff any of the roles, Defendant took adverse actions against him. Defendant took such actions because of Plaintiff's protected conduct. Defendant's actions were intentional.

38. As a result of Defendant's unlawful retaliation, Plaintiff suffered and expects to continue to suffer pecuniary losses, including, but not limited to, lost wages and other benefits associated with his employment.

39. As a result of Defendant's unlawful retaliation, Plaintiff suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

40. At all relevant times, Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights. Plaintiff therefore seeks punitive damages under the 42 USC § 1981.

41. Additionally, Plaintiff seeks equitable relief necessary to return to the position he would have been in but for Defendant's unlawful discrimination.

42. Defendant's actions referenced in the above paragraphs have caused Plaintiff to retain the services of the undersigned counsel in order to pursue his federally protected rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of the suit under the 42 USC § 1981.

**Count Three– Age Discrimination in Employment Act- Discrimination**

43. Plaintiff incorporates Paragraphs 5 – 24 as though fully set forth herein.

44. At all times material to this action Defendant was an "employer(s)" as defined by the ADEA. Defendant is therefore subject to the provisions of the ADEA.

45. Plaintiff was qualified for his position based upon training, education, experience, and the fact that he passed all relevant interviews for the position. By failing to offer Plaintiff either the role for Senior Control Engineer or Control Technician, Defendant took adverse actions against him. Defendant took such actions because of Plaintiff's age. Defendant's actions were intentional.

46. Defendant's actions, as described herein, constitute unlawful discrimination on the basis of Plaintiff's age, in violation of the ADEA. The employment practices complained above were intentional.

47. As a result of Defendant's unlawful discrimination, Plaintiff suffered and expects to continue to suffer pecuniary losses, including, but not limited to, lost wages and other benefits associated with his employment.

48. As a result of Defendant's unlawful discrimination, Plaintiff suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

49. At all relevant times, Defendant acted with malice and/or reckless

indifference to Plaintiff's federally protected rights.  Plaintiff seeks punitive damages under the ADEA.

50. Additionally, Plaintiff seeks equitable relief necessary to return to the position he would have been in but for Defendant's unlawful discrimination.

51. Defendant's actions referenced in the above paragraphs have caused Plaintiff to retain the services of the undersigned counsel in order to pursue his federally protected rights in this action.  Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of the suit under the ADEA.

## VII.
## PRAYER

52. Plaintiff respectfully requests that this Court grant the following relief from Defendant:

    i. A declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful.

    ii. Back pay, front pay, pension benefits, stock options, bonuses, health benefits, and any other relief necessary to compensate Plaintiff.

    iii. Punitive and exemplary damages.

    iv. Prejudgment and post-judgment interest.

    v. Attorney's fees necessary for prosecution of Plaintiff's claims.

    vi. Costs for the prosecution of Plaintiff's claims, including the costs of expert witness fees; and

    vii. Such other general relief to which Plaintiff shows himself justly

entitled.

## VIII.
## <u>JURY DEMAND</u>

53. Plaintiff requests that all ultimate fact issues be submitted to a jury for determination. He has paid the jury fee.

Respectfully Submitted,

_____
JANE LEGLER
Texas State Bar No. 03565820
jane@nlcemployeelaw.com
KYLA GAIL COLE
Texas State Bar No. 24033113
kyla@nlcemployeelaw.com

**COLE LEGLER, PLLC**
3300 Oak Lawn Ave., Ste. 425
Dallas, Texas 75219
(214) 748-7777
(214) 748-7778 (Facsimile)
**ATTORNEYS FOR PLAINTIFFS**